# EXHIBIT A

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLWITCH INC., <br><br> Plaintiff, <br><br> v. <br><br> TILE, INC., <br><br> Defendant. | Case No. 19-cv-01315-JSW <br><br> **ORDER GRANTING DEFENDANT TILE, INC.'S MOTION FOR LEAVE TO FILE A FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** <br><br> Re: Dkt. No. 186 |

Now before the Court for consideration is Defendant Tile, Inc.'s ("Tile" or "Defendant") motion for leave to file a first amended answer, affirmative defenses, and counterclaims. Having carefully reviewed the parties' papers, considered their arguments, and the relevant legal authority, the Court **GRANTS** Defendant's motion for leave to amend.

## BACKGROUND

Plaintiff Cellwitch, Inc. ("Cellwitch" or "Plaintiff") filed suit on March 12, 2019, alleging that Tile infringes its U.S. Patent No. 8,872,655 (the "'655 Patent"). The '655 Patent describes a process in which a user can attach a small disc to his or her personal items in order to track these items. Dkt. No. 32 ¶ 19. Cellwitch alleges that Tile leveraged Cellwitch's invention to establish Tile's dominant position in the personal object tracking sector. *Id.* ¶ 41.

On November 21, 2019, the Court denied Tile's motion to dismiss based on alleged invalidity under 35 U.S.C. § 101. Dkt No. 57. On December 5, 2019, Tile filed an answer and counterclaims for declaratory judgment as to non-infringement and invalidity of the '655 Patent. Dkt. No. 60. On December 18, 2019, Tile filed a petition for *inter partes* review ("IPR") before the Patent Trial and Appeal Board ("PTAB"), covering every asserted claim in the '655 Patent. On January 17, 2020, the Court granted Tile's motion to stay this action pending IPR. Dkt. No.

68. On May 13, 2021, the PTAB issued its Final Written Decision and found claims 1-3, 10-15, 22, and 23 were unpatentable but claims 4-9 and 16-21 were not unpatentable. Dkt. No. 75-1, Ex. A at 2. The Federal Circuit affirmed the PTAB and issued a mandate. Dkt. Nos. 103-3, 103-4. On January 13, 2023, the Court lifted the stay. Dkt. No. 119.

Tile now moves the Court for leave to file a first amended answer and counterclaims to the First Amended Complaint, seeking to add an additional counterclaim of inequitable conduct as to the '655 Patent.

## ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of right any time before a responsive pleading has been served. Once a responsive pleading has been served, however, the amendment requires written consent of the adverse party or leave of the court, and leave "shall be freely given when justice requires." Fed. R. Civ. P. 15(a). "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citation omitted).

The Court considers five factors to determine whether a motion for leave to file an amended complaint should be granted: "'(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,]'" and (5) whether the moving party previously amended a pleading. *In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (listing the first four factors as factors to be considered). However, each factor is not given equal weight, "as it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also*, *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "Absent prejudice, or a strong showing of any of the remaining … factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052. "The party opposing the amendment bears the burden of showing prejudice." *Alzheimer's Inst. of Am. v. Elan Corp*. PLC, 274 F.R.D. 272, 276 (N.D. Cal.

2

2011).

## B.     Bad Faith

Cellwitch argues that Tile's proposed amendment is in bad faith because Tile has not acted in good faith regarding the depositions of two named inventors – Hamish Orrick and Aiden Turner. Specifically, Cellwitch argues that Tile's conduct in scheduling depositions of Mr. Orrick and Mr. Turner, and then declining to proceed with the depositions at the last minute, is evidence that Tile's inequitable conduct counterclaim is nothing more than "gamesmanship" and "(a) to cast aspersions on Cellwitch and its inventors; and (b) to skirt IPR estoppel by presenting the Court with yet more invalidity theories in the guise of an inequitable conduct claim." Dkt. No. 194 ("Opp.") at 8-9.

The Court is unconvinced. First, to the extent that Cellwitch's argument is premised on the merits of Tile's proposed inequitable conduct counterclaim, the Court addresses those arguments at the appropriate section below. As to Tile's litigation conduct, the Court finds that while Tile's decision to defer the depositions of Mr. Orrick and Mr. Turner until a later time may be inconvenient, Tile is within its rights to do so. Discovery is ongoing, and Tile's stated reason for deferring these depositions to obtain a fuller record of document production is, at minimum, plausible. The Court sees nothing in Tile's conduct that would suggest that it is purposefully seeking to reschedule these depositions in bad faith to prejudice Cellwitch or inconvenience the deponents.

Cellwitch's argument that Tile is acting in bad faith by trying to "skirt IPR estoppel" is likewise unconvincing. Cellwitch cites no authority, and the Court is aware of none, that has applied IPR estoppel to bar a party from bringing an inequitable conduct counterclaim as to a particular prior art reference. IPR estoppel, which acts to prevent a district court defendant from challenging a patent on any grounds that it previously raised or could have raised in its IPR, serves a different purpose than the doctrine of inequitable conduct, which is founded on the strong public interest in precluding inventors from defrauding the patent office in order to obtain a patent. The penalty of unenforceability thus reflects the strong penalties justified against "[o]ne who . . . has inflicted damage on the patent examining system, obtaining a statutory period of exclusivity by

improper means, and on the public, which must face an unlawfully-granted patent." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995). Thus, a party is within their rights to allege a plausible theory of inequitable conduct, even if they would be estopped from bringing an invalidity challenge on those grounds. Tile's decision to do so here, even if as a means to "skirt IPR estoppel," would not render this motion in bad faith.

For the reasons stated above, the Court finds that this factor weighs in favor of granting leave to amend.

## C. Prejudice to Plaintiff

Cellwitch argues that it will be prejudiced if Tile is permitted leave to amend, because it will have to expend additional resources and time in discovery to oppose what it argues is a meritless counterclaim. While it is true that prejudice is the most significant factor in determining whether leave to amend should be granted, such prejudice must be substantial in order for the Court to justify denying leave to amend. *Chrimar Sys. Inc v. Cisco Sys. Inc*, No. 13-CV-01300-JSW, 2016 WL 1623922, at *3 (N.D. Cal. Apr. 21, 2016) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Here, Cellwitch's arguments as to prejudice fall short.

Cellwitch's only argument here is that permitting Tile to amend would only result in yet more delay to this case, and that Cellwitch would have to expend additional resources addressing what it argues is a meritless[1] defense and counterclaim. While the Court is cognizant of Cellwitch's interest in a prompt resolution of its case, this case is still in the relatively early stages with discovery ongoing and no set date for a discovery cut-off. Permitting leave to amend now would therefore not cause an undue delay in the resolution of this case. Any additional resources that Cellwitch would have to expend in response to the inequitable conduct allegations are likewise not sufficiently prejudicial to deny leave. As Tile correctly points out, additional resource expenditure in discovery is the natural consequence of virtually *every* amendment, especially where, as here, the amendment was made prior to a court-ordered discovery cut-off.

---

[1] Again, this argument begs the question of whether the inequitable conduct allegations are meritless, which the Court addresses in Section E, *infra*.

4

*See Chrimar,* 2016 WL 1623922, at *3. Any prejudice Cellwitch would face as a result of Tile's proposed amendment would thus be minimal, and therefore not so "substantial" as to justify denial of leave to amend. For these reasons, the Court finds that this factor also favors granting leave to amend.

## D. Undue Delay

Cellwitch argues that Tile was not diligent in seeking leave to amend, and unduly delayed bringing this motion when it was aware of the relevant facts underlying its proposed inequitable conduct counterclaim since March 2023. Opp. at 6. "When assessing whether a party unduly delayed in seeking leave to amend, courts focus on 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading'". *Chrimar,* 2016 WL 1623922, at *2 (quoting *AmerisourceBergen Corp. v. Dialysis West, Inc.,* 465 F.3d 946, 953 (9th Cir. 2006)). "Undue delay by itself, however, is insufficient to justify denying a motion to amend." *Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir. 1999).

Here, the Court finds that Tile's less than four-month[2] delay in bringing this motion does not weigh against granting leave to amend. Cellwitch's reliance on *Lockheed Martin Corp. v. Network Sols., Inc.,* 194 F.3d 980 (9th Cir. 1999) is inapposite. There, the plaintiff sought leave to amend its complaint "several months after the stipulated deadline for amending or supplementing the complaint" and "nothing in the proposed amended complaint relied upon facts that were unavailable before the deadline." *Id.* at 986. Indeed, the Ninth Circuit noted that "[t]he amendment was one that [plaintiff] had been considering for three months *before* the stipulated deadline." *Id.* (emphasis added). Here, there has been no stipulated or court-ordered deadline for amended or supplemental briefings, and at most, this motion was less than four months after Tile confirmed its awareness of the relevant documents in its motion to strike. *See* Dkt. No. 141. Compared to *Lockheed,* where the plaintiff had been contemplating the amendment for three

---

[2] Cellwitch's argument that Tile was "in possession of" the relevant documents as of March 24, 2023 is not well taken. *See* Opp. at 6. Cellwitch *produced* the relevant documents on that date, as well *as over 30,000 pages of other documents*. To the extent that the Court considers any delay on the Tile's part in bringing this motion, it does not consider the one month between Cellwitch's production and Tile's awareness of the documents as relevant.

months before a stipulated deadline and then waited several more months *after* the stipulated deadline to seek leave, the Court does not find that Tile's less than four-month delay justifies denial of leave to amend.

## E. Futility of Amendment

Finally, the Court turns to Cellwitch's arguments as to the futility of Tile's proposed amendment. "'Futility of amendment can, by itself, justify the denial of a motion for leave to amend.'" *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). In determining the futility of an amendment, "the Court must evaluate the claim by evaluating whether the allegations are sufficient to withstand a motion to dismiss under Rule 12(b)(6)." *Chrimar*, 2016 WL 1623922, at *4 (N.D. Cal. Apr. 21, 2016).

### 1. Pleading Standards for Inequitable Conduct

Allegations of inequitable conduct sound in fraud, and thus a party pleading inequitable conduct must plead the "circumstances constituting" the inequitable conduct with particularity under Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.*; *see also*, *Breville Pty Ltd. v. Storebound LLC*, No. 12-CV-01783-JST, 2013 WL 1758742, at *3 (N.D. Cal. Apr. 24, 2013). In contrast, "'knowledge' and 'intent' may be averred generally." *Exergen*, 575 F.3d at 1328. However, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29.

In its proposed amendment, Tile alleges that Mr. Orrick, a named inventor on the '655 Patent, knew of and intentionally failed to disclose at least U.S. Patent No. 6,624,752 to Klitsgaard ("Klitsgaard") during prosecution of the '655 Patent. Here, Cellwitch only challenges Tile's

6

proposed amendment as to materiality (i.e., the "how" and the "why") and specific intent.  The Court addresses each of these in turn.

### 2.    Materiality

An inequitable conduct claimant must plead the "particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record," because such allegations are necessary "to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30.

Cellwitch first argues that Klitsgaard cannot be material because Tile has not identified it on its Invalidity Contentions.  The Court does not credit this argument.  First, the standard for a prior art reference to be invalidating under 35 U.S.C. §§ 102 and 103 is higher than that required to prove inequitable conduct.  *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) ("Unlike the clear and convincing evidence standard for invalidating a patent in the district court under 35 U.S.C. §§ 102 and 103, the standard for establishing but-for materiality in the inequitable conduct context only requires a preponderance of the evidence, giving claims their broadest reasonable construction." (internal quotations omitted)).  Tile's decision not to identify Klitsgaard in its invalidity contentions could plausibly reflect its determination that Klitsgaard is insufficient to invalidate the '655 Patent under §§ 102 and/or 103 but still sufficiently material for the purposes of inequitable conduct.  More to the point, Cellwitch has argued that Tile is precluded under IPR estoppel from relying on any written references that it could have asserted at IPR, which would include Klitsgaard.  Thus, Tile's failure to include Klitsgaard as a basis for its invalidity case now has no bearing on whether Klitsgaard is material for the purposes of inequitable conduct.

Here, Tile's proposed amendment is sufficient to plead that Klitsgaard is material and not cumulative.  Specifically, Tile pleads that Klitsgaard discloses a specific limitation that was amended to the '655 Patent claims to overcome a rejection: "at least one buddy wireless communications terminal." (the "Buddy Limitation").  Dkt. Nos. 186-23 at pp. 30-33, 186-19. Cellwitch disputes that Klitsgaard discloses the Buddy Limitation, and therefore whether it is

United States District Court
Northern District of California

cumulative of other prior art already before the examiner during the '655 Patent prosecution. However, at this stage in the proceedings, the Court need not determine the scope and content of what Klitsgaard discloses. *See Breville*, 2013 WL 1758742, at *6 (N.D. Cal. Apr. 24, 2013) ("The Court does not read *Exergen* as requiring a court to determine, on the face of the pleadings, whether the allegedly missing material is in fact material and not cumulative."). Instead, "'the scope and content of prior art and what the prior art teaches are questions of fact[]'" that cannot be resolved at the pleadings stage. *See McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007) (quoting *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006)). Thus, the question before the Court on this motion is not whether Klitsgaard is in fact material and not cumulative, but whether Tile has *pled* those allegations with sufficient specificity as required by Rule 9(b). Because the Court finds that Tile has done so, it declines to find the proposed amendment futile on this ground.

### 3. Intent to Deceive

In addition to pleading the circumstances of inequitable conduct with specificity, an inequitable conduct claimant must plead "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material representations, and (2) withheld or misrepresented this information with intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29. A "reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329, n. 5. This stands in contrast to the requirement of *proving* inequitable conduct, which requires that the intent to deceive is the single most reasonable inference that can be drawn from the facts. At the pleading stage, a claimant "need only plead 'sufficient allegations of underlying facts from which a court may reasonably infer' that specific individuals had intent to deceive." *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013-JST, 2014 WL 988915, at *7 (N.D. Cal. Mar. 10, 2014) (quoting *Exergen*, 575 F.3d at 1328-29); *see also*, *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2016 WL 4744165, at *10 (N.D. Cal. Sept. 12, 2016) (at the pleading stage, specific intent to deceive need not be the single most reasonable inference from the evidence).

8

Here, Tile has sufficiently pled facts from which the Court could draw a reasonable inference of specific intent. To summarize, Tile has pled the following facts in its proposed amendment: (1) that Mr. Orrick was aware of the Klitsgaard reference in 2008, (2) that Mr. Orrick believed that Klitsgaard was a "threat" and therefore material, and (3) that Mr. Orrick failed to disclose Klitsgaard to the PTO during prosecution of the '655 Patent. Taking these well-pled allegations as true for the purposes of a motion to dismiss (and therefore, this motion for leave to amend), the Court concludes that one could reasonably infer that Mr. Orrick's failure to disclose Klitsgaard to the PTO during the prosecution of the '655 Patent was a deliberate attempt to avoid rejection.

The cases that Cellwitch relies upon are inapposite here. In *Ocado Innovation Ltd. v. AutoStore AS*, No. 21-cv-00041, 2021 WL 6197076, at *5 (D.N.H. 2021), the District of New Hampshire applied *Therasense*'s requirement that intent to deceive "must be the single most reasonable inference able to be drawn from the evidence." *Id.* However, Courts in this District have repeatedly rejected such a standard, holding instead that at the pleading stage, *Exergen* does *not* require a claimant plead sufficient facts from which specific intent to deceive is the single most reasonable inference to be drawn, but merely a plausible one. *See, e.g.*, *Cypress*, 2014 WL 988915, at *7 (N.D. Cal. Mar. 10, 2014); *Cave Consulting*, 2016 WL 4744165, at *10 (N.D. Cal. Sept. 12, 2016) (at the pleading stage, specific intent to deceive need not be the single most reasonable inference from the evidence).

In *BlackBerry Ltd. v. Typo Prod. LLC*, No. 14-CV-00023-WHO, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014), the defendant pled merely that the inequitable conduct reference was widely known but not disclosed to the PTO, which the Court held was insufficient to draw an inference of specific intent. Similarly, in *Hum. Genome Scis., Inc. v. Genentech, Inc.*, No. 2:11-CV-6519-MRP, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011), the defendant alleged inequitable conduct based on prior art references that were highly material, and which patentee's counsel knew of the "existence and significance" of. The court held that these allegations "could support an inference that [patentee] knew or should have known of the materiality of the [references]" but was insufficient to allow the court to draw the separate inference of intent. *Id.*

Here, Tile has pled more than that Mr. Orrick knew or should have known of the materiality of the Klitsgaard reference; Tile has pled that Mr. Orrick found Klitsgaard through a deliberate search of relevant prior art to Cellwitch's own patents, and viewed Klitsgaard as a "threat" to Cellwitch's patents. These allegations speak to Mr. Orrick's state of mind, and are sufficient for the Court to draw a reasonable inference that his failure to disclose the Klitsgaard reference during prosecution of the '655 Patent was a deliberate choice. At minimum, the Court concludes here that granting Tile leave to amend to plead inequitable conduct would not be futile in light of these allegations. Accordingly, the Court finds this factor also favors granting leave to amend.

## F.      Prior Amendment

As Tile has not previously sought an amendment, the Court finds that this factor weighs in favor of granting leave to amend. *See, e.g.*, *AliveCor, Inc. v. Apple Inc.*, No. 21-CV-03958-JSW, 2022 WL 10719062, at *3 (N.D. Cal. Oct. 18, 2022)*, on reconsideration,* No. 21-CV-03958-JSW, 2022 WL 14813685 (N.D. Cal. Oct. 25, 2022).

## CONCLUSION

Upon consideration of the five factors relevant in determining whether to grant or deny leave to amend, the Court here finds all factors favor granting leave to amend. Accordingly, the Court **GRANTS** Tile's motion for leave to file a first amended answer, affirmative defenses, and counterclaims.

**IT IS SO ORDERED.**

Dated: November 2, 2023

JEFFREY S. WHITE
United States District Judge

10